UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

RAMON L. RUSSELL,

        Plaintiff,                      Case No. 1:13-cv-168

v.                                                Honorable Robert J. Jonker

FRED LOCKWOOD et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

## Factual Allegations

Plaintiff Ramon L. Russell presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF). He sues the following LCF employees: Deputy Warden Fred Lockwood, Correctional Officer (unknown) Cox; Grievance Coordinator Tina Stepp, and Lieutenant (unknown) DeKeyser.

Plaintiff's complaint is long on declarations of legal concepts and very short on facts. Plaintiff contends that Defendants Cox and DeKeyser conspired to issue a major-misconduct ticket against him on November 18, 2012, ostensibly in retaliation for Plaintiff's having filed a complaint against Defendants Cox and Lockwood on some unknown occasions for unspecified reasons. Plaintiff does not identify who drafted the misconduct ticket, but he implies that Cox was the author. Defendant DeKeyser processed the misconduct ticket, apparently rejecting Plaintiff's claim that the misconduct ticket was retaliatory. DeKeyser allegedly told Plaintiff, "File complaints and grievances and this is what you'll get." (Compl. ¶ 14, docket #1, Page ID#4.) Plaintiff told DeKeyser that DeKeyser was retaliating against him for "doing the right thing." (*Id.*) DeKeyser then responded, "Now I'm doing my right thing." (*Id.*) Plaintiff complains that DeKeyser did not allow Plaintiff to present witnesses and refused to allow Plaintiff to remain at the hearing, informing Plaintiff that he would receive DeKeyser's decision in the mail.

Plaintiff broadly complains that Defendants continued to retaliate by falsifying misconduct tickets, concealing evidence, and withholding rulings. However, he makes no factual allegations about other misconduct tickets. He alleges that he was "told by a Confidential Staff Informant that Defendants will intentionally falsify evidence in order to issue yet another Major Misconduct Ticket[] in order to transfer the Plaintiff." (*Id.* ¶ 17, Page ID#5.) On an unspecified date, Plaintiff Stepp allegedly threatened Plaintiff that, if he filed another grievance or lawsuit, Plaintiff would be transferred to a prison he did not like.

Plaintiff appealed DeKeyser's finding on the misconduct ticket. Defendant Lockwood allegedly withheld his decision on the appeal until Plaintiff had completed the sanction ordered. Lockwood apparently returned Plaintiff's lengthy appeal and attachments to Plaintiff, directing Plaintiff to limit his appeal to the space on the appeal form. Plaintiff responded with a confrontational letter (quoted verbatim in the complaint), telling Lockwood that his limitation was

"[a]sinine" and that Plaintiff would let his appeal stand as written. (*Id.* ¶19, Page ID#5.) According to Plaintiff, a "Confidential Staff Informant" advised Plaintiff that Lockwood became enraged by the response and, allegedly, withheld his ruling until after Plaintiff had completed his sanction. Plaintiff alleges that he filed a grievance against Lockwood, which Defendant Stepp refused to process.

Plaintiff complains that all Defendants conspired together. He further alleges that each Defendant "either intentionally or with deliberate indifference and/or with reckless disregard to the truth and of Plaintiff's constitutional rights, helped and fabricated evidence, failed to advise the Plaintiff that they had withheld evidence f[ro]m the Plaintiff which would have allowed Plaintiff to have been found not guilty." (*Id.* ¶¶ 43-46, Page ID#8.) Plaintiff claims that, by their collective conduct, Defendants violated his rights under the Eighth Amendment, the Due Process Clause and the Equal Protection Clause and retaliated against him for the exercise of his First Amendment rights.

## Discussion

I. <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Conspiracy

Plaintiff makes sweeping allegations that Defendants conspired together to deprive him of his constitutional rights. To state a claim for conspiracy, a plaintiff must plead with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Smith v. Rose*, 760 F.2d 102,106 (6th Cir. 1985); *Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30,

1996). A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action.'" *See Hensley v. Gassman*, 693 F.3d 681 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Id.*; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). "[V]ague allegations of a wide-ranging conspiracy are wholly conclusory and are, therefore, insufficient to state a claim." *Hartsfield v. Mayer*, No. 95-1411, 1996 WL 43541, at *3 (6th Cir. Feb. 1, 1996). A simple allegation that defendants conspired to cover up wrongful actions is too conclusory and too speculative to state a claim of conspiracy. *Birrell v. Michigan,* No. 94-2456, 1995 WL 355662, at *2 (6th Cir. June 13, 1995).

In the instant case, Plaintiff makes few factual allegations. Reading his complaint generously, he alleges that Defendant Cox issued an allegedly retaliatory misconduct, that Defendant DeKeyser upheld the misconduct charge, that Defendant Lockwood delayed issuing a decision on Plaintiff's appeal of his misconduct ticket, and that Defendant Stepp at some point told Plaintiff that he would be transferred to another prison if he did not quit filing grievances. He links these allegations together by claiming that Defendants acted in concert and stating that the Court "must also understand what the Defendants call the (Gray/White Wall similar to the Blue Flu for the Police Departments)." (Compl. ¶ 7, Page ID#3 (verbatim).)

Plaintiff's allegations of conspiracy are conclusory and speculative. His allegations, even viewed in the light most favorable to Plaintiff, describe a few discrete facts involving several individual officers. Plaintiff has provided no allegations establishing a link between the alleged conspirators or any agreement between them. He relies entirely on a highly attenuated inference from the mere fact that multiple prison officials have either disciplined him or made decisions with

which he disagrees. As the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680. In light of the far more likely possibility that Defendants' conduct was unrelated, Plaintiff fails to state a plausible claim of conspiracy.

      **B.**  **Due Process**

Plaintiff claims that the major misconduct charge filed against him was "fraudulent." (Compl. ¶ 10, Page ID#4.) A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior. The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by

the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Plaintiff does not allege that his major misconduct convictions resulted in any loss of good-time credits, nor could he. First, because his ticket was reviewed by Lieutenant DeKeyser, a custody officer, rather than a formal hearing officer under the Department of Licensing and Regulatory Affairs, *see* MICH. ADMIN. CODE r. 791.3315, Plaintiff's misconduct ticket must have been a Class II misconduct. *See* MICH. DEP'T OF CORR., Policy Directive 03.03.105 ¶¶ M , PP. His sanctions, therefore, would have been limited to 5 days' toplock (confinement to quarters), 30 days' loss of privileges, 40 hours' assignment of extra duty, and restitution. He could not have been transferred to segregation or lose his disciplinary credits, which are sanctions applicable only to Class I misconducts. *Id.* ¶¶ AAAA & Attach. D.[1]

Second, even had Plaintiff lost disciplinary credits, he still would not have experienced a loss of "good time" within the meaning of *Wolff*. The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[2] for prisoners convicted for crimes occurring after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. 481 F.3d at 440. Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. 355 F. App'x at 912; *accord, Wilson v. Rapelje*, No.

---

[1] Plaintiff fails to allege the nature of the alleged misconduct. As a result, the Court must consider the scope of Plaintiff's claim by reference to published MDOC policies.

[2] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. MICH. COMP. LAWS § 800.33(5).

09-13030, 2010 WL 5491196, at * 4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 5491196 (Jan. 4, 2011). In the absence of a demonstrated liberty interest, Plaintiff has no due process claim based on the loss of disciplinary credits. *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

Even in the absence of a protectible liberty interest in disciplinary credits, a prisoner may be able to raise a due process challenge to prison misconduct convictions that result in a significant, atypical deprivation. *See Sandin v. Connor*, 515 U.S. 472 (1995). Plaintiff has not identified any significant deprivation arising from his convictions. Indeed, Plaintiff makes absolutely no allegations about his sanctions other than to say he received some. Unless a prison misconduct conviction results in an extension of the duration of a prisoner's sentence or some other atypical hardship, a due-process claim fails. *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004).

In sum, because Plaintiff fails to allege that he experienced a loss of good-time credits or was subjected to a significant, atypical deprivation of another sort, his complaint about the timing and substance of his misconduct hearing and appeal fails to state a procedural due process claim.

In addition, the substantive component of the Due Process Clause does not provide any basis for relief. "A plaintiff asserting a substantive due process claim faces a virtually insurmountable uphill struggle. He must show that the government conduct in question was so reprehensible as to 'shock the conscience' of the court." *Rimmer-Bey v. Brown*, 62 F.3d 789, 791 n.4 (6th Cir. 1995) (citing *Rochin v. California*, 342 U.S. 165 (1952)); *Mertik v. Blalock*, 983 F.2d 1353, 1367-68 (6th Cir. 1993)); *see also Hampton v. Hobbs*, 106 F.3d 1281, 1288 (6th Cir. 1997). Generally, a false misconduct charge may violate substantive due process where a defendant's

conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Cale v. Johnson,* 861 F.2d 943, 950 (6th Cir.1988), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999).

Here, Plaintiff alleges that some Defendant, presumably Defendant Cox, issued a Class II misconduct ticket against him for an unspecified infraction and that other Defendants allowed him to be convicted of that conduct, either by action or inaction. Such vague allegations do not shock the conscience or constitute an egregious abuse of power. Plaintiff therefore fails to state a substantive due process claim.

### C. Equal Protection

Plaintiff asserts that Defendants' collective conduct violated the Equal Protection Clause. He fails, however, to identify conduct by any Defendant that would support such a claim.

The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Plaintiff does not suggest that he is a member of a suspect class, and "prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir.1998).

Because neither a fundamental right nor a suspect class is at issue, the rational basis review standard applies. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)). To prove his equal

protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiff fails even to allege that he was treated differently than any other prisoner, much less to allege that such prisoners were similarly situated in all relevant respects. Accordingly he fails to allege an equal protection claim.

### D. Eighth Amendment

Plaintiff claims that Defendants' conduct violated his Eighth Amendment rights. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

Plaintiff's unspecified sanctions included, at most, in-cell confinement and loss of privileges. Though possibly unpleasant, such temporary and minor inconveniences fall far short of conditions intolerable for prison confinement. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511

(6th Cir. 2001); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal citation omitted)). Indeed, the Supreme Court has recognized that even placement in segregation, a sanction far more substantial, is considered a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347); *see also Jones v. Waller*, No. 98-5739, 1999 WL 313893, at *2 (6th Cir. May 4, 1999). Plaintiff's allegations therefore fail to state an Eighth Amendment claim.

### E. Retaliation

Plaintiff alleges that Defendants have retaliated against him for filing unspecified past grievances. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive

'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("bare allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening).

Plaintiff's only implied allegation against Defendant Cox is that, on November 18, 2012, Cox issued a major misconduct ticket against Plaintiff, ostensibly in retaliation for Plaintiff having filed complaints against Cox. Plaintiff fails to allege any fact linking Cox's ticket to Plaintiff's prior complaints. Plaintiff does not even allege temporal proximity between the two events that could support an inference of retaliatory motive. *See Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (holding that, in limited circumstances, temporal proximity may be "'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive'") (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). Indeed, Plaintiff does not indicate when he complained or what he complained about, nor does he describe the nature of the allegedly fraudulent misconduct. He has not presented any facts whatsoever to support his conclusory allegation that Defendant Cox retaliated against him because of his grievances and lawsuits. Accordingly, he fails to state a claim against Defendant Cox.

Plaintiff's allegations against Defendant DeKeyser also fail to state a claim. DeKeyser's only conduct was to review a ticket filed by another officer. The mere fact that DeKeyser rejected Plaintiff's statement that the ticket was wrongly issued does not indicate that DeKeyser himself had a retaliatory motive. Further, Defendant DeKeyser's comment, "File complaints and grievances and this is what you'll get," does not indicate that DeKeyser was himself

retaliating. It merely indicates that DeKeyser was not persuaded by Plaintiff's complaint that Cox's ticket was retaliatory. Plaintiff has not alleged any fact suggesting that DeKeyser was himself the subject of a prior grievance filed by Plaintiff or that he had any reason to be motivated to retaliate by a grievance filed against another officer at some unspecified time. Plaintiff's factual allegations against DeKeyser therefore are insufficient to support a retaliation claim.

Plaintiff makes only two allegations against Defendant Stepp. First, he alleges that Stepp made a comment about Plaintiff's likelihood of being transferred if he continued to complain. A specific threat of harm may satisfy the adverse-action requirement if it would deter a person of ordinary firmness from exercising his or her First Amendment rights, *see, e.g., Thaddeus-X*, 175 F.3d at 396, 398 (threat of physical harm); *Smith v. Yarrow*, 78 F. App'x 529, 542 (6th Cir. 2003) (threat to change drug test results). However, certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations. *Thaddeus-X*, 175 F.3d at 398; *Smith*, 78 F. App'x at 542.

In the instant case, Stepp did not make an actual threat. She did not state that she personally would have Plaintiff transferred, and Plaintiff makes no allegation that Stepp had the authority to effect a transfer. Stepp's comment therefore cannot be considered sufficiently adverse to support a retaliation claim.

In his second allegation against Stepp, Plaintiff complains that, as the Grievance Coordinator for the facility, she refused to process his grievance against Defendant Lockwood. The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002). However, the filing of a non-frivolous grievance is constitutionally-protected conduct for which a prisoner cannot be subjected to retaliation.

*Shehee v. Luttrell*, 199 F.3d 295, 300-301 (6th Cir. 1999); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Plaintiff, however, fails to allege that Stepp was retaliating for Plaintiff's prior filings of grievances or lawsuits when she refused to process Plaintiff's grievance against Lockwood. Instead, he alleges that Stepp refused to process his grievance in an attempt to cover-up Plaintiff's claim against Lockwood. Such allegations do not properly allege retaliation; at best they allege a violation of due process through the interference with Plaintiff's right to grieve. As previously discussed, however, a prisoner has no due process right to file a grievance. *Walker,* 128 F. App'x at 445.

Further, Plaintiff's conclusory allegations are unsupported by the facts he alleges. Under MDOC policy, a prisoner may not grieve decisions made in major or minor misconduct determinations, nor may he grieve "issues directly related to the hearing process (e.g. sufficiency of witness statements; timeliness of misconduct review; timeliness of hearing)." MICH. DEP'T OF CORR., Policy Directive 03.02.130 ¶ F(2) and (4). Plaintiff offers no factual allegation that would support an inference that Stepp's refusal to process the grievance was the result of anything other than the application of the grievance policy.

Next, Plaintiff alleges that Defendant Lockwood intentionally withheld his ruling on the misconduct appeal until Plaintiff had served his full sanction, supposedly in retaliation for Plaintiff's filing of unspecified grievances and insistence on the form of his appeal. Plaintiff, however, alleges no fact in support of that claim. Instead, according to Plaintiff's own allegations, Lockwood returned Plaintiff's appeal to him for rewriting, indicating that Plaintiff could not submit his lengthy exhibit. Plaintiff responded by calling Lockwood's rule "asinine," insisting that he had a constitutional right to file whatever he wanted, and refusing to comply with Lockwood's rule. Thereafter, Lockwood apparently did not issue a decision until Plaintiff had served his misconduct sanction. Plaintiff attempts to demonstrate retaliatory intent by alleging that an unknown,

confidential staff informant told him that Lockwood became angry by Plaintiff's response. He also states that the delay of the appeal decision violated the purpose of the appeal process.

Plaintiff's allegations do not support his claim that Lockwood's failure to respond was based on any protected conduct taken by Plaintiff. Plaintiff does not contend that Lockwood became angry because Plaintiff had filed an appeal of the misconduct decision, action that could properly be considered protected conduct under the First Amendment. Instead, Plaintiff alleges that Lockwood was angered by Plaintiff's insulting letter, in which he refused to follow Lockwood's rules for the appeal. A prisoner's use of harassing or degrading language is not protected conduct because such behavior falls within the definition of "insolence" under the MDOC Policy Directive governing prisoner misconduct. *See Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008); M℩CH. DEP'T OF CORR., Policy Directive 03.03.1005B.

In addition, no plausible inference of intentional delay can be drawn from the fact that Lockwood's decision came after Plaintiff had fully served his sanction. *See Iqbal*, 556 U.S. at 679 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). As previously discussed, based on Plaintiff's limited factual allegations, the misconduct ticket in issue could only have been a Class II misconduct. Under MDOC policy, Plaintiff was entitled to file his appeal with Lockwood within 15 days of the decision of the hearing officer. *See* M℩CH. DEP'T OF CORR., Policy Directive 03.03.105 ¶ UUU. Under the rule, Lockwood had 30 calendar days to respond to the appeal. *Id.* ¶ WWW. Because Class II misconduct sanctions are limited to 5 days' toplock and 30 days' loss of privileges, the result of any appeal routinely will be issued after all sanctions have been served. Therefore the timing of Lockwood's decision provides no factual support for Plaintiff's conclusory allegations of retaliation.

For all these reasons Plaintiff fails to state a plausible claim of retaliation against any Defendant.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).[3]

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

An Order and Judgment consistent with this Opinion will be entered.

                                                        /s/Robert J. Jonker
                                            ROBERT J. JONKER
                                UNITED STATES DISTRICT JUDGE

Dated: March 26, 2013

---

[3] In light of the Court's decision, Plaintiff's pending motion seeking preliminary injunctive relief (docket #3) will be denied as moot.